BUTTERICK PUB. CO. v. PEERLESS PATTERN CO.

(Circuit Court of Appeals, Second Circuit. May 8, 1917.)

No. 226.

Patents ☞328—Invention—Patterns for Garments.

The O'Loughlin patent, No. 632,361, for a pattern for garments, having the sheets representing different parts of the garment designated by numbers or other characters, made by perforations, by which they may be transferred to the cloth, *held* void for lack of invention, in view of the prior art.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in equity by the Butterick Publishing Company against the Peerless Pattern Company. Decree for defendant, and complainant appeals. Affirmed.

The following is the opinion below, of Veeder, District Judge:

This is a suit by the Butterick Publishing Company against the Peerless Pattern Company for infringement of patent No. 632,361, granted to R. S. O'Loughlin September 5, 1899, for an improved pattern for garments. In the complainant's article of manufacture each one of the series of sheets representing the different parts of a garment is distinguished or identified by a perforated mark or symbol "consisting of a letter, number, arbitrary sign, or other character, or of a combination of words, letters, numerals, arbitrary signs, or other characters." By this means the patentee attains "convenient rapid, and accurate classification of the respective parts of the pattern, the avoidance of errors and confusion peculiar or incident to the system of manufacturing and using patterns for garments heretofore in vogue, and the facilitating of a rapid and accurate cutting of material to be used in making garments, and the proper, rapid, and accurate joining and adjustment of the respective parts thereof in the construction of garments."

This explanation of the utility of the device is followed by a statement of its relation to the prior art: "Heretofore the custom has been to endeavor to identify the separate portions of the patterns by designating each separate piece by a technical name. Hitherto, on account of the difficulty and uncertainty of identification, much confusion has been occasioned, considerable delay experienced, and great quantities of material damaged or destroyed. The difficulty of identifying each particular part by means of its technical name is apparent."

The claims are two in number:

"1. As a new article of manufacture a pattern for garments, comprising a series of sheets representing different parts of a garment capable of being assembled together in a definite manner into a garment, each of the said sheets being provided with a different designating character, device, or symbol constituted by perforations in the body of the said sheets the said charac-

ters, etc., constituting a definite series, whereby designations on the pattern may be readily transferred to the garment material to which the pattern is applied, so that the material itself when cut to the pattern may be assembled into a garment with certainty."

Claim 2, which is limited to the use of serial numbers, is not in issue.

The contents of the file wrapper are instructive. The application was rejected in the first instance for lack of invention and novelty. The examiner said of the original application: "The double use of a system of characters, such as alphabet letters or numerals, is ancient, and common in various arts analogous to applicant's, such as in building material, wherein separate timbers, stones. etc., are numbered in order to identify their places. The new State House in Boston was built with stones quarried 200 miles distant, cut and fitted in the quarry, and numbered by the workmen in order to find their proper places in the general plan. Solomon's Temple, in Jerusalem, was so constructed, according to the record in the books of Kings and Chronicles. From another point of view there is plainly no invention involved in discarding the names for the parts of a pattern mentioned by applicant and substituting therefor these shorter names—the letters or numerals—to identify them."

The applicant claimed to differentiate by reason of the fact that he not only numbered the different parts of his structure, but also provided a means whereby this numbering may be transferred to the parts of the ultimate structure and the pattern discarded. In reply, the examiner pointed out that simply perforating the letters, instead of printing them, was a very old device, to be seen in any stencil, as, for example, the patent to Fowler, 148,291. The applicant then asserted that it had not been shown to be old to provide a pattern sheet having two functions: First, the function of serving as a guide to cut out the pattern from the fabric; and, second, the function of providing means for applying identifying marks directly to the fabric cut out to designate the said fabric by the numerals or symbols appearing in the pattern, to the end that the parts of the garment may be, readily assembled by reference to a chart of instruction accompanying the pattern. To this the examiner replied by citing the patent to Rinder, 1,696, to show that it is old to perforate the designating characters in the body of each part of the pattern series, for applicant's purpose of marking the cloth with such character at the same time with the outlines of the pattern, by dusting chalk therethrough. The applicant rejoined that the patent to Rinder does not clearly show that the numerals are perforated in the pattern, and, even if they were so perforated, they do not constitute a definite series whereby the various parts of the pattern may be identified. But the application was finally rejected by the examiner on June 17, 1899, for failure to disclose patentable invention. Briefly restating the grounds, he pointed out that the British patent to Rinder, 1,696, shows a series of patterns having a perforated designated character for the purpose of sifting powder through upon the fabric to be cut out; and the domestic pattern to Slade, 156,382, shows a series of patterns having each a designating character. In view of this state of the art, he held that all the applicant had done was to substitute for the designating character employed by the British patentee a series of designating characters whereby he could assemble in a certain predetermined order the various sections of a garment, and that this was common in the arts.

On appeal to the examiners in chief the decision of the examiner was reversed. Their decision was substantially this: The applicant's device is an improvement on the ordinary patterns of commerce, in which the separate patterns which together make the pattern of a garment have been differentiated from each other by names given to each part pattern. By distinguishing each part of a pattern by a number, letter, or symbol stenciled in it, the identification of each part relatively to the other parts can be transferred to the position of the cloth beneath the part, and also serves to indicate concisely the parts in a table of instructions for guidance in laying the patterns on the cloth and for assembling the cloth parts of the garment. Slade's patent, in which the contour of the parts is relied on, has not the means for identifying each part relatively to the other. Nor in Rinder's patent is there a mark on each part distinguishing it from every other part. What the applicant has done is to apply by the means disclosed by the Rinder patent to separate

part-patterns different marks which distinguish each from the other. By this novelty the utilities mentioned are secured.

Now, from the additional proof of the prior art presented at the hearing, it appears that the Butterick Company itself made and sold patterns as early as 1872 in which the individual pieces referred to in the printed labels were identified by groups of perforations. One perforation identified the collar, two perforations the sleeve, and so on. Such groups of perforations were certainly symbols within the clear meaning of the claim, and were intrinsically conformed to a definite series, as well extrinsically by reference to the label. The capacity to permit chalking through upon the material, upon which the first claim of the patent in suit relies, is a well-known incident of the use of perforations, and is therefore inherent in these groups of perforations. A number of the prior patents in evidence make it clear that chalking through was well known in the pattern art, as in the patent to Thomas, 109,686, where this is shown both for transferring the outline of the pattern to the cloth and for transferring identifying numerals as well. It is true that a separate numeral is not shown on each piece drawn on the Thomas pattern; but the numerals differ on at least two pieces, and must have been meant as identifying factors for some purpose. Surely it cannot be patentable to identify ten pieces by different numbers, where two have been so identified before. To the same effect is the Slade patent, 156,382. To be sure, the principal plan set forth therein is the identification of the different parts by different colors; but the patent makes it the use of printed distinguishing marks or names in lieu of or in addition to the colors.

This clear disclosure is rendered more forcible by the fact that in the description of the parts of the pattern in the patent itself each is referred to by an identifying letter. There can be no possible difference between identifying the parts of the pattern in the patent and identifying them in the sewing room. In addition, the witness Glick testified that he was a cutter for the Domestic Pattern Company, and that he personally cut into superposed pattern sheets the numerals intended for identification of the parts. The witness Newton corroborates Glick as to the use of numerals for identification purposes on the Domestic pattern, save that he remembers them as used in 1874 or 1875, instead of 1889, as Glick testified. It is probable that the time assigned by Newton is correct, since the witness Pearsall states that the Domestic Company did not use numerals after 1884, which is the earliest date of his acquaintance with the Domestic patterns.

In view of this proof of the prior art, it is apparent that the patent was issued upon a misconception of the prior art. Pattern parts had not been identified theretofore, as the examiners in chief were led to believe, merely by technical names. Moreover, with respect to the use of symbols in "a definite series," upon which much stress is laid, it is to be observed that it is based upon the fact that the symbols used were referred to serially or in definite succession in a label or description which accompanies the pattern. But such label or description is not called for by the claim, or even mentioned in it. If it were, the "article of manufacture" to which the claim is addressed could not include a physically separate device such as the printed description. Even if the complainant's contention were tenable, it is clear that any symbols whatever may be said to form a definite series since in this art a label has been customarily employed in connection with the paper pattern.

I am of opinion that it did not involve invention in 1898 to produce the article of manufacture claimed by the patentee in the claim in suit. In view of the explicit language of the specification and claim the claim cannot be limited to any particular kind of symbol. But, if it be assumed that the issue is whether it involved invention to supply identifying numerals or letters specifically formed by perforations made in the various parts of a garment pattern, assigning a different numeral or letter to each part, the same conclusion follows. The use of two specified perforated numerals, as shown in the Thomas patent and model, left no room for invention in using a greater number of such numerals where more parts were to be identified. Particularly is this true in view of Slade, who used twenty-four letters for twenty-four separate pieces. Since it was old to use a separate symbol of some kind, such as groups of perforations, on each piece of a tissue paper pattern, as used in

Butterick patterns as early as 1872 it was a mere carrying forward of the original thought to adopt the perforated numerals shown as identifying agents for two pieces in the Thomas patent, or the same class of symbol shown in the British patent to Rinder. Since perforated numerals were old, as shown by Thomas, for identifying two different parts of a pattern, it was a mere change in degree to use such numerals for as many as seven or eight different parts, as had been done with the cluster symbols of Butterick. Since in the Slade patent each of the twenty-four cluster pattern parts shown has a separate printed letter for purposes of reference in the patent, and the patent says that any marks may be used, instead of colors to identify the pattern parts, there is no invention in perforating, instead of printing such characters, as has been done for analogous purposes in Butterick's older practice.

Where a patentee is seeking to enforce a monopoly of a seemingly obvious expedient, it is incumbent upon him to show by some kind of evidence that the seemingly obvious change was not so clearly within the domain of the expected skill of the calling as it seems to be. It is true that in some cases apparently obvious changes have been held to be patentable. But in every such case reliance has been placed upon a clear showing, either that there was a new and unexpected result, or that an old problem long unsolved had at length been mastered. There is no evidence in this record tending to show either of these conditions. The nature of the result following from the use of numerals or letters was simple identification, and that is what resulted from the use of the old Butterick clusters, not to mention the numerals of Thomas. So far as commercial use is concerned, it is significant that the New Idea Company, which is controlled by the Butterick Company, has never used the patent, and is able to sell 8,-000,000 patterns a year with the cluster of perforations for identification. Furthermore, the evidence shows that the Home Pattern Company, the Pictorial Review Company, and the May Manton Company, all large distributors of patterns, have been able to sell millions of patterns each year without the employment of the so-called indispensable idea set forth in the patent in suit.

The defendant may have a decree.

Kerr, Page, Cooper & Hayward, of New York City (Thomas B. Kerr and John C. Kerr, both of New York City, of counsel), for appellant.

Hardy, Stancliffe & Whitaker, of New York City (Noah A. Stancliffe and Charles J. Hardy, both of New York City, of counsel), for appellee.

Before COXE, WARD, and ROGERS, Circuit Judges.

COXE, Circuit Judge. The patentee states that his object is to provide for the convenient, rapid and accurate identification of the respective parts of a garment pattern and the avoidance of errors and confusion. He shows in his drawings one form of his alleged invention but he says it is understood that other forms and characters may be used. He asserts that prior to his patent the custom had been to endeavor to identify the separate portions of the pattern by a technical name and that confusion arose from this habit. He seeks to remedy this by numbering each piece of the pattern by perforations in the form of figures. He says, "I prefer to use serial numbers for the purpose of illustrating the alleged invention." In the illustration attached to the specification there are twenty-three pieces in the garment pattern which are numbered from 1 to 23 inclusive.

The patent has now expired and no relief other than an accounting can be had. There was nothing new in numbering these parts separately with different designating characters made by perforations, in the body of the sheets, the characters constituting a definite series

whereby designations of the pattern may be readily transferred to the garment materials to which the pattern is applied, so that the material when cut to the pattern may be assembled into a garment with accuracy. It is undoubtedly desirable in making a garment from a pattern containing a plurality of pieces that each of them shall be numbered so that the numbers of the pattern may be transferred to the cloth by rubbing chalk on the pattern in order that the number on the paper pattern may be accurately stenciled on the cloth. If this were done on the cloth resembling the pattern Fig. 23, for instance, the number 23 would be transferred to the cloth and would prevent any confusion occasioned by the mixing up of the various pieces. The same result would be accomplished if the operator marked "23" on the cloth with a piece of chalk.

The first claim is as follows:

"1. As a new article of manufacture, a pattern for garments comprising a series of sheets representing different parts of a garment capable of being assembled together in a definite manner into a garment, each of the said sheets being provided with a different designating character, device or symbol constituted by perforations in the body of the said sheets the said characters, etc., constituting a definite series, whereby designations of the pattern may be readily transferred to the garment material to which the pattern is applied, so that the material itself, when cut to the pattern may be assembled into a garment with certainty."

It will be seen that the claim seeks to secure as a new article of manufacture a pattern for garments comprising a series of sheets which can be assembled in a garment each of the sheets being numbered, lettered or identified in some similar manner. These identifying figures must be transferred to the corresponding pieces of cloth which are to make the completed garment. This is done by making the identifying marks by small perforations which insure accuracy in transferring the proper number to the cloth. There was nothing new in using perforated numbers, letters or other symbols for the identification of separate parts of garments.

Judge Veeder has carefully considered the prior art and we do not deem it necessary to review at length the testimony in this regard. He says:

"A number of prior patents in evidence make it clear that chalking through was well known in the pattern art, as in the patent to Thomas, 109,686, where this is shown both for transferring the outline of the pattern to the cloth and for transferring identical numerals as well."

When we consider the claim in issue we are unable to find invention in the elements of the combination singly or combined. Garment patterns made of paper were old. Paper patterns were identified by marks, figures and letters. These figures and letters were made by perforations and chalk marks on the paper transferred the figures to the corresponding pieces of cloth. No other patent shows the perforations on twenty-four separate pieces but invention cannot be predicated of the number of pieces which make up the pattern. We agree with Judge Veeder when he says regarding the Thomas patent which fails to show identifying numerals on each piece of the pattern:

"Surely it cannot be patentable to identify ten pieces by different numbers where two have been so identified before."

The decree is affirmed with costs.